UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

ALVIN B. GALUTEN, MD, PSC,　　　　　　Civil Action No. _____
　　Plaintiff

V.

　　　　　　　　　　　　　　　　　　　　JURY TRIAL DEMANDED

MEDICUS RADIOLOGY STAFFING, LLC,
　　Defendant

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

This action sounds in breach of contract and a violation of the New Hampshire Consumer Protection Act, RSA 358-A. It arises out of Defendant's breach of the Corporate Independent Physician Agreement ("CIPA," attached hereto as Exhibit A) between the parties pursuant to which the Plaintiff was to provide *locum tenens* physician services to health care providers identified by Defendant. In support of its claims, Plaintiff represents the following:

## PARTIES

1. Plaintiff Alvin B. Galuten, MD, PSC, ("Galuten") is a professional services corporation organized under the laws of the State of Kentucky with a principal place of business at 1220 Knox Valley Drive, Brentwood, Tennessee, 37027.

2. Defendant Medicus Radiology Staffing, LLC, is a New Hampshire limited liability company with a principal place of business of 7 Industrial Way, Suite 5, Salem, New Hampshire, 03079.

## JURISDICTION AND VENUE

3. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) and (c) in that the parties are corporate citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Venue is proper in the District of New Hampshire because the Defendant resides in this District, a substantial part of the events giving rise to the claims occurred in this District, and the parties contract provides that "[t]he Company (Galuten) consents to the exclusive jurisdiction of the state and federal courts of New Hampshire for the resolution of all disputes related to or arising out of this Agreement." CIPA, ¶ 10 at 3; see 28 U.S.C. § 1391(a).

## FACTS

5. Galuten is a professional services corporation which employs Dr. Alvin Galuten, who is a diagnostic radiologist Board Certified by the American Board of Radiology and licensed to practice medicine in, among other jurisdictions, the states of Tennessee, Kentucky, Florida and Missouri.

6. Medicus is a third party staffing agency who contracts with companies or individual physicians to place physicians at hospitals and other medical facilities to provide *locum tenens* medical services.[1]

7. The CIPA provides that Galuten would provide *locum tenens* radiological services to health care providers identified by Medicus. The terms of the *locum tenens* assignment, including the identity of the Provider, duration of the assignment, and compensation, are set forth in Schedule A of the CIPA. In the instant case, the Provider

---

[1] A l*ocum tenens* physician is one who assumes the duties of another physician in his or her absence, or who holds a position temporarily.

2

was identified as Hardin Memorial Hospital in Elizabethtown, Kentucky ("Hardin Memorial").

8. Pursuant to Schedule A of the CIPA, Galuten was assigned to Hardin Memorial for the assignment period beginning Monday April 30, 2007, and extending on a weekly basis from Monday to Sunday through August 5, 2007. Medicus promised to pay Galuten at the rate of $3,000 per day,[2] and overtime at the rate of $450 per hour.

9. During the first week of the assignment (April 30, 2007 to May 6, 2007), Galuten worked 70 regular hours and 37 overtime hours. During the second week of the assignment (May 7, 2007 to May 13, 2007), he worked 70 regular hours and 43.5 overtime hours. During the third week of the assignment (May 14, 2007 to May 20, 2007), he worked 70 regular hours and 64.75 overtime hours.

10. On or about May 14, 2007, Galuten spoke with Zak Rizzo of Medicus and explained that he was exhausted and experiencing significant low back and leg pain attributable to the long hours he was working. Galuten requested that he be permitted to take a few days off to rest. Rizzo, acting on behalf of Medicus, agreed to allow Galuten the brief period of rest.

11. Approximately two (2) days later, Rizzo sent an e-mail to Galuten in which Rizzo falsely characterized Galuten's request for a brief period of rest as notice by Galuten that he was resigning from the assignment.[3] Rizzo knew that Galuten had only requested a period of the rest and did not state that he was resigning.

12. Galuten worked through the period ending May 20, 2007. He took a brief period of rest and attempted to contact Rizzo by telephone to determine when he should

---

[2] A "day" is defined in Schedule A as a 10-hour period beginning at 6:00 a.m. and ending at 4:00 p.m.
[3] The May 16, 2007, e-mail from Rizzo indicates that the two spoke on May 7, 2007. However, Galuten asserts it was May 14, 2007, and that Rizzo's e-mail is wrong about the date.

3

next report to the hospital.  Prior to sending an e-mail on June 1, 2007, Galuten called Rizzo and left voice mail messages about his return to work.  On June 1, 2007, Galuten wrote an e-mail to Rizzo in this regard, to which Rizzo replied:  "Glad to hear your (sic) feeling better.  I was not in the office this afternoon.  I will check on things Monday, and give you a call."

13.     As of June 7, 2007, Rizzo had not responded to Galuten.  Galuten wrote an e-mail to Rizzo on June 7, 2007, in which he explained that he had "not heard back from [Rizzo] as to when I am to be back at work."  He went on to explain that he been ready to return to work "ever since the end of the one week I was off."  Later that afternoon, Rizzo wrote back to Galuten and again falsely characterized Galuten's request for a period of rest as a "resignation."  Rizzo then stated that Galuten had been replaced.

14.     At the Regular Day Rate under Schedule A of the CIPA, excluding the one week off that Medicus approved, Galuten would have been paid $3,000 per day for sixty-nine (69) days on the balance of the contract.  This totals $207,000.  By letter dated August 10, 2007, Galuten through counsel made a written demand for payment of the full balance of the contract, to which Medicus refused.

## COUNT I

### Breach of Contract

15.     Galuten restates and incorporates the allegations set forth in paragraphs 1-14 above.

16.     The CIPA between Galuten and Medicus created an enforceable contract between the parties that obligated Medicus to compensate Galuten at a certain rate for the Hardin Memorial assignment.

4

17. Medicus granted to Galuten an absence from the assignment for one week and then refused to allow him to fulfill the balance of the assignment by claiming that Galuten had resigned.

18. Medicus' refusal to pay the balance of the contract has caused harm to Galuten in the amount of $207,000, plus interest.

## COUNT II

### Violation of NH RSA 358-A

19. Galuten restates and incorporates the allegations set forth in paragraphs 1-18 above.

20. NH RSA 358-A:2 makes it unlawful "for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state." Medicus is a "person" within the meaning of RSA 358-A: 1, I.

21. RSA 358-A:10 authorizes private causes of action for person injured "by another's use of any method, act or practice declared unlawful by this chapter . . . ." If the violation of the statute is willful or knowing, the court shall award damages in the amount of $1,000, or not less than 2 times, nor more than 3 times actual damages, whichever is greater, and attorney's fees and costs. Id.

22. As set forth in paragraphs 1-18 above, Galuten and Medicus entered into a contract pursuant to which Medicus was to compensate Galuten at a set rate for the assignment to Hardin Memorial to perform diagnostic radiological services. After agreeing to allow Galuten to take approximately a week off to rest his low back and leg, Medicus willfully and knowingly falsely accused Galuten of resigning from the

assignment in order to avoid payment under the agreement.  Moreover, Medicus willfully and knowingly refused to permit Galuten to return to the assignment, a right Galuten clearly possessed under the terms of the contract Medicus signed with Galuten.

23. Medicus' conduct constitutes an unfair method of competition, or unfair and deceptive act or trade practice in the conduct of trade and commerce and therefore violates RSA 358-A:2.  Galuten should be awarded damages in the amount of its actual monetary losses under the contract, and attorney's fees and costs.  In addition, Medicus' violation was willful and knowing and therefore Galuten should be awarded no less than 2, nor more than 3 times Galuten's actual damages, plus attorney's fees and costs.

## CLAIM FOR COSTS AND EXPENSES

24. Galuten restates and incorporates the allegations set forth in paragraphs 1-23 above.

25. Paragraph 10.6 of the CIPA provides that the prevailing party in any dispute under the contract "shall recover reasonable expenses, attorney's fees, and costs incurred therein or in the enforcement or collection of any judgment or award rendered therein."

## JURY TRIAL DEMANDED

26. Galuten restates and incorporates the allegations set forth in paragraphs 1-25 above.

27. Galuten demands a jury trial on Counts I and II, above.

WHEREFORE, Galuten respectfully requests that this Honorable Court:

A. Enter judgment in Galuten's favor on Counts I, awarding it all damages as determined at trial, plus interest, costs and attorney's fees;

  B. Enter judgment in Galuten's favor on Count II, awarding it all damages as determined at trial, including an award of multiple damages, plus interest, costs and attorney's fees;

  C. Award such other relief as the Court deems just and equitable.

           Respectfully submitted,

           ALVIN B. GALUTEN, MD, PSC

           By Its Attorneys,

           HOWARD & RUOFF, PLLC

Date: April 22, 2010  By: /s/ Mark E. Howard
           Mark E. Howard (Bar No. 4077)
           1850 Elm Street
           Manchester, NH  03104
           (603) 625-1254
           mhoward@howardruoff.com