*Coverage you can count on*

# Medicus

## CORPORATE INDEPENDENT PHYSICIAN AGREEMENT

This CORPORATE INDEPENDENT PHYSICIAN AGREEMENT ("Agreement") is made this 4th day of April, 2007 (the "Effective Date"), by and between Medicus Radiology Staffing, LLC, a New Hampshire limited liability company with a principal place of business at 7 Industrial Way, Suite 5, Salem, NH 03079 ("Medicus") and Alvin B Galuten MD PCS, with a principal place of business of 1220 Knox Valley Drive, Brentwood Tn. 37027 and an EIN# of 61-1210574 ("Company").

1. **Terms of Agreement.** The Company hereby engages Medicus to arrange for certain physicians employed or engaged by the Company (each, a "Physician") to provide locum tenens services on behalf of various health care providers identified by Medicus (each, a "Provider") in accordance with this Agreement. The rates for services payable by Medicus to the Company with respect to an assignment of a Physician to provide locum tenens services to a Provider (each, an "Assignment"), the duration of a Physician's Assignment ("Assignment Term"), and all other terms and conditions relating to an Assignment shall be described in Schedule A, a form of which is attached hereto. Schedule A shall be executed by Company, Medicus and the applicable Physician for each separate Assignment during the Term of this Agreement. All Physicians are listed on Schedule B.

2. **Company's Representations and Warranties.** Company represents and warrants the following at all times during the Term of this Agreement:

    2.1 The Company has disclosed to Medicus the following matters, whether occurring at any time prior to or during the Term of this Agreement:

    2.1.1 any malpractice suit, claim (whether or not filed in court), settlement, settlement allocation, judgment, verdict, or decree against the Company and/or any Physician;

    2.1.2 any disciplinary, peer review, or professional review investigation, proceeding, or action instituted against Company or a Physician by any licensure board, medical center, medical school, health care facility or entity, professional society or association, third party payor, peer, or professional review committee or body, or governmental agency, including but limited to any investigation or proceeding based on any allegation against Company or a Physician of violating professional ethics or standards, or engaging in illegal, unethical, or other misconduct (of any nature or degree) relating to the practice of medicine;

    2.1.3 any criminal complaint or proceeding or indictment, in which Company or a Physician is named as a defendant and/or a target;

    2.1.4 any investigation or proceeding, whether administrative, civil, or criminal, relating to an allegation against the Company or a Physician of filing false healthcare claims, violating anti-kickback laws or laws prohibiting physician self-referrals, or engaging in other billing irregularities and/or improprieties; and

    2.1.5 any dependency on or habitual use of alcohol or controlled substances that impairs or may impair a Physician's ability to practice medicine or fulfill any other material obligation under this Agreement.

    2.2 Each Physician is duly licensed to practice medicine in the state in which the Provider is located, which license has not been suspended, revoked or restricted in any manner.

    2.3 To the extent required for a Physician's Assignment, such Physician has current controlled substance registrations issued by the appropriate federal and state governmental agencies which are required for the Physician to prescribe controlled substances under both federal and state law, which registrations have not been suspended, revoked, or restricted in any manner.

    2.4 No Physician is or has been suspended or excluded from any such third party payment program.

    2.5 Physician is and will remain eligible for professional liability coverage described in Section 5.

    2.6 Each Physician who is assigned by Provider to provide services at a health care facility during an Assignment ("Facility"), will obtain and maintain unrestricted medical staff privileges to provide services at such Facility.

7 Industrial Way, Unit 5, Salem, NH 03079          Phone: (866)442-5956 FAX: (603)898-3067

3. **Company's Obligations.**

   3.1 **Pre-Placement Procedures.** The Company shall cause each Physician, prior to or upon execution of this Agreement, to provide Medicus with his or her Curriculum Vitae. The Company shall also cause each Physician to comply with all pre-placement procedures specified in writing by either a Provider or a Facility, including, but not limited to, drug testing and background checks. The Company agrees to provide each Provider and Facility – either directly or through Medicus – any and all documents required by such Provider or Facility to credential a Physician to provide services at a Facility. The Company acknowledges and agrees that a Provider's and/or a Facility's decision to grant or deny a Physician credentials is the sole responsibility of the Provider or Facility (as applicable), and the Company agrees that it will not, and that it will obtain the agreement of each Physician that he/she will not, hold Medicus responsible for any credentialing decision. Medicus agrees to notify the Company of a Facility's credentialing decision regarding each Physician, to the extent the Facility provides Medicus notice of the same.

   3.2 **Provision of Services.** The Company shall ensure that at all times that a Physician is assigned to a Provider, the Physician shall devote his or her full time and attention to the treatment of patients of the Provider and in accordance with the policies and procedures of the Provider.

   3.3 **Incident Reporting.** The Company shall report to the Provider and Medicus any incident that may result in any kind of legal claim against the Company, the Provider and/or Medicus.

   3.4 **Standards of Practice.** The Company shall, and shall ensure that each of its Physicians shall, at all times (a) render services to patients in a competent, professional, and ethical manner, in accordance with prevailing standards of medical practice and all applicable legal requirements; and (b) use the equipment, instruments, pharmaceuticals, and supplies furnished by the Provider or Facility for the purposes for which they are customarily used and in a manner consistent with sound medical practice.

   3.5 **Billing and Collection.** The Company acknowledges that all rights and responsibilities for billing patients and/or third parties for reimbursement for the services provided by the Physicians on behalf of a Provider belong to such Provider. The Company shall not, and shall ensure that its Physicians shall not, bill any patient or third party payor for any services rendered by the Physicians on behalf of a Provider.

4. **Compensation and Expenses.** Company shall receive compensation for services its Physicians render during an Assignment Term at the rate specified on the applicable Schedule A for each Assignment. On a weekly basis, the Company shall cause each Physician to complete a Medicus timesheet documenting time that a Physician spent on an Assignment on behalf of a Provider and have it signed by the authorized Provider supervisor. The Company shall also cause each Physician to submit to Medicus an invoice for any allowed expenses (including receipts) incurred as outlined in the applicable Schedule A for each Assignment. The Company shall fax such timesheets and expense receipts to Medicus each Monday no later than 12 noon (EST). Medicus will pay the Company within 15 days after its receipt of the signed timesheet and expense receipt(s), if any.

5. **Professional Liability Insurance.** During the Term hereof, Medicus shall provide at its expense, professional liability insurance for all professional services rendered by the Company's Physicians under this Agreement in the amount of $1,000,000 for each occurrence with a per annum aggregate limitation of $3,000,000.

6. **Cancellation of Assignment.**

   6.1 **Cancellation With Cause.** In the event that a Provider provides Medicus notice of its intent to cancel an Assignment prior to the expiration of the Assignment Term due to concerns over the quality of services rendered by a Physician, then upon Medicus' notice to the Company, the applicable Assignment and related Schedule A shall automatically terminate and the Company shall cause the Physician who was providing services on behalf of the Provider in connection with the terminated Assignment to immediately cease providing services on behalf of the Provider. Medicus does not have any responsibility to pay the on behalf of such Provider or with respect to any amount that would otherwise be due for the uncompleted portion of the Assignment Term under the applicable Schedule A for the Assignment. Any agreement between the Provider and Company (and/or a Physician) regarding a Provider's concern about the quality of services

rendered by a Physician without the express written consent of Medicus will not be binding on Medicus. This provision shall survive termination of this Agreement.

6.2 **Cancellation Without Cause.** In the event a Provider provides Medicus notice of its intent to cancel an Assignment prior to the expiration of the Assignment Term for a reason other than a Provider's concern regarding a Physician's quality of services pursuant to Section 6.1 above, then upon Medicus' notice to the Company, the applicable Assignment and related Schedule A shall automatically terminate and the Company shall cause the Physician who was providing services on behalf of the Provider in connection with the terminated Assignment to immediately cease providing services on behalf of the Provider. In the event a Provider terminates an Assignment in accordance with this Section 6.2, then Medicus shall pay the Company an amount equal to the amount that would otherwise be due for the uncompleted portion of the Assignment Term up to a maximum of thirty (30) days; provided however, that Medicus' obligation to make such payment to the Company shall be strictly dependent on its receipt of the same payment from the Provider. This provision shall survive termination of this Agreement.

7. **Term and Termination.**

    7.1 **Term.** Commencing on the Effective Date, this Agreement shall remain in full force and effect for a period of one (1) year, and shall automatically renew for successive periods of one (1) year, unless sooner terminated as provided herein ("Term").

    7.2 **Termination.** In the event that a party breaches a term or condition of this Agreement, the non-breaching party may terminate this Agreement if such breach has not been cured to the satisfaction of the non-breaching party within thirty (30) days after written notice of such breach has been provided to the breaching party. Either party may terminate this Agreement without cause upon sixty (60) days prior written notice to the Company.

8. **Confidentiality.** The Company shall not, and shall ensure that each Physician shall not, disclose to anyone (including any Provider or Facility), either directly or indirectly, the terms of this Agreement (including any executed Schedule A) and any invoice that the Company provides to Medicus for payment of services hereunder. This provision shall survive the termination of this Agreement.

9. **Status of the Parties.** It is expressly understood and agreed that in the performance of services under this Agreement, the Company and each Physician shall at all times furnish its/his/her services as an independent contractor and not as an employee of Medicus, or any of Medicus' affiliates, and that as a result, Medicus shall not have any control over the means and method of the professional services provided by any Physician hereunder. As an independent contractor, the Company acknowledges and agrees that Medicus has no responsibility whatsoever for FICA taxes, worker's compensation insurance premiums, unemployment, state and federal income taxes, or similar withholding taxes or payments on the Company's or any Physician's behalf, or any direct responsibility for vacation pay, paid sick leave, retirement benefits, or other employee benefits of any kind whatsoever relating to the Company or to any Physician.

10. **Miscellaneous.**

    10.1 **Resolution of Disputes and Governing Law.** Any dispute (whether in tort, contract or otherwise) arising out of or relating to this Agreement in any way shall be governed exclusively by the law of the State of New Hampshire without giving effect to its conflict of law principles. The Company consents to the exclusive jurisdiction of the state and federal courts of New Hampshire for the resolution of all disputes related to or arising out of this Agreement. This provision shall survive the termination of this Agreement.

    10.2 **Entire Agreement.** This Agreement (including each executed Schedule A for each Assignment) contains the entire agreement between the Company and Medicus and supersedes any and all prior agreements, contracts, and understandings, written or oral, between the parties relating to the subject matter hereof. Any modifications to this Agreement (including the implementation of each Assignment pursuant to a new Schedule A), must be made in writing and signed both by the Company and Medicus.

    10.3 **Assignment; Benefit.** Neither party may assign any of its rights or obligations hereunder, without the prior written consent of the other party. This Agreement shall inure to the benefit of, and be binding upon, the parties hereto and their respective successors and permitted assigns.

10.4 **Severability.** In the event any provision of this Agreement shall be held invalid by a court of competent jurisdiction, such provision shall be deleted from the Agreement, and the remaining provisions of this Agreement will remain in full force and effect.

10.5 **Counterparts.** This Agreement may be executed in any number of counterparts, each of which, so executed, shall be deemed to be an original and such counterpart shall together constitute one in the same agreement.

10.6 **Costs and Expenses.** In the event of any litigation concerning any controversy, claim or dispute between the parties hereto, arising out of or relating to this Agreement, the breach hereof, or the interpretation hereof, the prevailing party shall recover reasonable expenses, attorneys' fees, and costs incurred therein or in the enforcement or collection of any judgment or award rendered therein.

10.7 **Waiver.** The failure of Medicus to enforce the strict terms of this Agreement shall not constitute a waiver of these terms.

10.8 **Notice.** Any notices to be given hereunder by either party to the other shall be deemed to be received by the intended recipient: (a) when delivered personally; (b) the day following delivery to a nationally recognized overnight courier service with proof of delivery; or (c) three (3) days after mailing by certified mail, postage prepaid with return receipt requested, in each case addressed to the parties at the addresses set forth above or at any other address designated by the parties in writing.

IN WITNESS WHEREOF, the parties have caused this Agreement to be signed as of the Effective Date.

**MEDICUS RADIOLOGY STAFFING, LLC**          **COMPANY**

By: _[signature]_                By: _[signature]_
Date: 4.12.07                    Date: 4/11/07
Title: _____           Title: President

7 Industrial Way, Unit 5, Salem, NH 03079          Phone: (866)442-5956  FAX: (603)898-3067

**Medicus**
*Coverage you can count on*

## IPA CORPORATE SCHEDULE A

In accordance with the Corporate Independent Physician Agreement executed between Medicus Radiology Staffing LLC ["Medicus"], Alvin B Galuten MD PCS ["Company"] with the EIN # of **61-1210574**, and principal place of business at **1220 Knox Valley Drive, Brentwood, TN, 37027**, with an Effective Date of **4/4/2007**, ["CIPA"], Medicus, the Company and **Alvin B Galuten MD** ["Physician"] agree as follows:

1. **General.** Physician will provide locum tenens coverage on behalf of **Hardin Memorial Hospital** ("Provider") at the Assignment Locations noted below pursuant to the terms and conditions of the CIPA and this Schedule A. Physician hereby agrees to comply with all of Company's obligations in the CIPA, including all covenants the Company makes on behalf of Physician, as though Physician were a signator to the CIPA, such covenants to include without limitation: Section 2 regarding Physician's professional and personal background information, Section 3 regarding Physician's assistance in completing background checks and obtaining credentials with a Provider or a Facility as well as the quality of Physician's performance of services rendered in connection with this Assignment, Section 6 regarding Medicus' and Physician's rights and responsibilities in the event that a Provider prematurely cancels this Assignment Term, and Section 9 regarding the confidentiality of certain information. Company hereby agrees that all terms and conditions of the CIPA remain in full force and effect.

2. **Assignment Specifics:**

**ASSIGNMENT TERM:**
Monday – Sunday;
April 30th – May 6th; May 7th – May 13th; May 14th – May 20th; May 21st – May 27th; May 28th – June 3rd; June 4th – June 10th; June 11th – June 17th; June 18th – June 24th; June 25th – July 1st; July 2nd – July 8th; July 9th – July 15th; July 16th – July 22nd; July 23rd – July 29th; July 30th – August 5th.

**ASSIGNMENT LOCATION(S): HARDIN MEMORIAL HOSPITAL, ELIZABETHTOWN, KENTUCKY.**

**RATE SCHEDULE:**

**REGULAR DAILY RATE:**
Regular Day Rate:   $3000.00   "Day" refers to an 10 – hour day, Monday to Friday 6am – 4pm
Weekend Day Rate:   $3000.00   "Day" refers to an 10 – hour day Saturday and Sunday 6am – 4pm

**OVERTIME RATE**
Overtime [OT] Hourly Rate: **$450.00** [See Special Arrangements below for details]

**EXPENSES:**
For this work assignment, the following outlines the authorized expense arrangements for which Medicus will coordinate with the Provider and make on behalf of the Physician:

- ☒ Hotel:        [Holiday Inn or equivalent]
- ☐ Airfare:      [Roundtrip coach-level fare]
- ☐ Rental Car:   [Mid-sized / Standard as local transportation]
- ☒ Physician will use their own automobile and be paid at the IRS approved rate per mile.

**SPECIAL ARRANGEMENTS:**
For this work assignment, the following special arrangements apply:
- ☒ Timesheet is to be signed by Authorized Provider Supervisor.
- ☒ Any and all overtime must be approved.
- ☒ Physician shall have a current State/Commonwealth of **KY** license.

**PERSONAL EXPENSES:** The Company is responsible for any of Physician's personal expenses charged to the Provider or lodging location (i.e., personal phone calls, meals, or entertainment). These expenses should be paid before leaving the Assignment. Any charges not paid will be deducted from the Company's compensation for Physician's services

7 Industrial Way, Unit 5, Salem, NH 03079          Phone: (866)442-5956 Fax: (603)898-3067

rendered in connection with this Assignment. The Company authorizes Medicus to make deductions relating to personal or unauthorized expenses from the Company's compensation.

**WORK VERIFICATION, BILLING & PAYMENT:** In order for the Company to be paid, Physician is required to complete a Medicus Timesheet and have it signed by the authorized Provider Supervisor. The Company must also submit to Medicus an invoice for any authorized expenses incurred. In order to process payment, the Company must submit to Medicus a [1] valid, signed Timesheet and [2] Invoice with receipts. Those items should be faxed to Medicus each Monday by 12 noon, or within 48 hours of the last day of the assignment. Medicus will send payment net fifteen [15] days after their receipt.

**TRAVEL ARRANGEMENTS:** Medicus will make all arrangements specified on Page 1 on behalf the Physician [only] for hotel, airfare and/or car rental requirements. For Physician's personal car travel, mileage must be included with the invoice. If the mileage is not included, Medicus will estimate the mileage using MapQuest [or other similar service] and pay the IRS approved rate per mile.

3. **Confidentiality.** Company's Regular Daily Rate, Overtime Rate and On-Call and Call Back Rates are confidential. Neither Company nor Physician shall divulge Medicus' rate to any other party, including the Provider or any Facility.

The Company and Physician have each read, understand, and agree to the terms and conditions set forth in this Schedule A and the CIPA. Please initial Page 1, sign below and fax both pages to Medicus at 603.898.3067.

**MEDICUS [RADIOLOGY] STAFFING, LLC**

Name: Zak Rizzo
Signature: _____
Date: 4.12.07

**COMPANY**

Name: AB Galustan MD PSC
Signature: _____
Date: 4/11/07
Title: President

**PHYSICIAN**

Name: _____
Signature: _____
Date: _____

7 Industrial Way, Unit 5, Salem, NH 03079          Phone: (866)442-5956 Fax: (603)898-3067