UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

|  |  |  |
|---|---|---|
| Alvin B. Galuten, MD, PSC, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | Civil Action No. 10-cv-155-SM |
| v. | ) | |
| | ) | |
| Medicus Radiology Staffing, LLC, | ) | |
| | ) | |
| Defendant | ) | |

**DEFENDANT MEDICUS RADIOLOGY STAFFING, LLC'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION IN
LIMINE REGARDING THE ADMISSIBILIY OF PLAINTIFF'S CONDUCT
AT HIS HOTEL DURING THE RELEVANT TIME PERIOD**

Defendant, Medicus Radiology Staffing, LLC, by and through its attorneys, Sheehan

Phinney Bass + Green, P.A., hereby submits this memorandum of law in support of its motion in

limine seeking a determination of the admissibility of evidence regarding Plaintiff's conduct at a

hotel during the relevant time period, and states in support as follows:

**I.
Introduction**

Plaintiff is a Tennessee-based professional services corporation employing Dr. Alvin B.

Galuten ("Dr. Galuten" or "Plaintiff"). Medicus Radiology Staffing, LLC (hereinafter,

"Medicus") placed Dr. Galuten at Hardin Memorial Hospital ("Hardin") in Kentucky. The terms

of Plaintiff's assignment at Hardin were reduced to a written contract and an addendum to the

contract, called a "Schedule A." See Pl.'s Complaint ¶ 7. The Schedule A, which was signed by

the parties, called for Dr. Galuten to perform radiological services at Hardin every day from

April 30, 2007 to August 5, 2007. Id. at ¶ 8. Dr. Galuten completed the first two weeks of his

assignment, but at the start of his third week, he called Medicus to state that he would not work the scheduled fourth week. Id. at ¶ 10. This litigation centers on Plaintiff not working the fourth week of the assignment and Medicus' subsequent refusal to allow him to return to work the remainder of the contracted term.

Plaintiff alleges that he asked Medicus to take off "about a week." Medicus counters that Plaintiff was not specific as to when he would. See Def.'s Answer ¶ 10. Medicus will present evidence that, because Plaintiff would not work the full term and was even uncertain as to when he would return and would not commit to a firm return date, Medicus treated Plaintiff as having breached the parties' contract, and Medicus scrambled to find other radiologists to complete the remainder of the placement at the hospital. Plaintiff sued Medicus claiming that Medicus agreed to allow him to leave and that he should be paid for the portion of the placement, through August 5th, that he did not complete. See Pl.'s Complaint ¶ 14.

Discovery in this matter revealed that Plaintiff engaged in inappropriate conduct at a hotel near Hardin during the first week of his placement and that he was not permitted to return to that hotel. The details of the incident at the hotel are summarized below, and there seems to be little disagreement about what happened. The testimony at trial will be that Hardin was aware of the incident, as was Medicus. The testimony will be that Medicus took the incident at the hotel into consideration when declining Plaintiff's request to modify the parties' contract, as embodied in the Schedule A, to allow Plaintiff to leave his assignment and return at a later date.

Throughout discovery, Plaintiff has objected to the evidence regarding the incident at the hotel on the grounds that it is irrelevant and, in some cases, based on hearsay. It is expected that Plaintiff will advance the same objections at trial, and Medicus therefore seeks a preliminary determination of the admissibility of the evidence. For the reasons explained below, Plaintiff's

conduct at the hotel is relevant because it was considered by Medicus (and Hardin) when contemplating Plaintiff's request to modify the contract. Plaintiff appears to contend that he and Medicus agreed to terms on a modified contract. Medicus' knowledge of Plaintiff's conduct at the hotel makes it less likely that Medicus agreed to modified terms with Plaintiff, and the evidence is therefore relevant on that basis.

Further, the evidence concerning the hotel incident is not inadmissible hearsay. First, Plaintiff himself can testify as to what happened at the hotel, and based on his deposition testimony, he can describe what happened. Second, Defendant is currently engaged in conversations with the hotel and may shortly be noticing a trial deposition of a current and/or former hotel employee concerning Dr. Galuten's conduct. More importantly, whether the incident at the hotel happened or not, Medicus was aware of it and thought the reports of it were true. The fact that Medicus considered it when deciding whether to agree to Plaintiff's proposed modification is the essential value of the evidence. Therefore, the truth of any statements made by the hotel staff is not the purpose of the evidence. Instead, the evidence is offered to explain Medicus' state of mind when Plaintiff approached Medicus seeking agreement on modified contractual terms. Plaintiff also has placed Medicus' state of mind at issue, both in regards to whether it intended to modify the contract and by alleging Medicus willfully or knowingly engaged in unfair and deceptive conduct.

## II.
### Summary of Evidence Regarding Plaintiff's Conduct at the Hotel

Plaintiff's placement at Hardin started on April 30, 2007. Hardin and Medicus arranged for Plaintiff to stay at a Holiday Inn approximately three miles from the hospital. See Depo. Tr. of Alvin Galuten, MD at 172, 176, attached hereto as Exhibit A [hereinafter "Galuten Depo. at __"]. Plaintiff's personal car broke down, and when he awoke one morning to depart for the

nearby hospital, he asked an employee of the hotel to drive him (Plaintiff) to the hospital. Id. at

178. The hotel clerk refused, but suggested that Plaintiff call a taxi service for a ride. Id. at 178.

A disagreement arose between Plaintiff and the hotel employee. During that disagreement,

Plaintiff referred to the hotel employee as "effeminate." Id. at 179-80. The written statements

provided by the hotel staff indicate the Plaintiff was insulting and derogatory, but Plaintiff does

not remember one way or the other. Id. at 186-87. During the confrontation, Plaintiff dialed 9-

1-1 to obtain a ride from the hotel to the hospital to report for work and to report to the police

that a hotel employee threw a phone book in Plaintiff's direction. Id. at 188-89. Plaintiff, who

was paid $128,000 for three weeks work, explained in deposition that he called 9-1-1 in part to

get a ride to the nearby hospital because he did not think a taxi was "a long-term solution." Id. at

183, 184. In retrospect, Plaintiff concedes that it is "disturbing" that he lost his temper with the

hotel employee. Id. at 188, 190. Plaintiff was asked to leave the Holiday Inn and Medicus

arranged for Plaintiff to stay at another hotel for the remainder of his assignment.

Grant Smith, a manager at Medicus, testified at his deposition and will testify at trial that

he and others at Medicus were made aware of the incident at the hotel and the fact that Plaintiff

was asked not to return to the Holiday Inn. See Depo. Tr. of Grant Smith at 32-33, attached

hereto as Exhibit B [hereinafter "Smith Depo. at ___"]. He also testified that Plaintiff's conduct

at the Holiday Inn caused Medicus concern about its relationship with Dr. Galuten and any

potential adverse effect on its relationship with Hardin. Id. at 55.

When Plaintiff reemerged on June 1, 2007 (11 days after not appearing for work as

scheduled) seeking a return to Hardin, Medicus took into consideration the hotel incident.

Medicus ultimately declined Plaintiff's request to strike a new deal that would have allowed

Plaintiff to return to Hardin. Id. at 55-57. Tony Welch, who was the Vice President of Human

Resources of Hardin during Plaintiff's assignment, testified that hotel incident did affect

Hardin's desire not to have him return to the hospital. See Depo. Tr. of Tony Welch at 22-26,

attached hereto as Exhibit C [hereinafter "Welch Depo. at ___"].

### III.
### Evidence Concerning Plaintiff's Conduct at the Hotel is Relevant

Plaintiff and Medicus had a valid and binding contract. See Pl.'s Complaint ¶ 16. A

material term of that contract was the dates on which Plaintiff promised to work at Hardin.

When he told Medicus he would be altering those terms, by taking off "about a week," he (in

essence) sought a modification of the parties' contract. The written agreement between Plaintiff

and Medicus contained a "no oral modification clause," a clause that required all changes to be

in writing and signed by the parties. See Ex. A to Pl.'s Complaint ¶ 10.2 ("Any modifications to

this Agreement (including the implementation of each Assignment pursuant to a new Schedule

A), must be made in writing and signed by both the Company [Plaintiff] and Medicus.")

(underlining in original).

Under New Hampshire law, the law governing the parties' agreement, parties may

modify their contracts orally, despite a contractual "no oral modification clause." See Prime

Financial Group, Inc. v. Masters, 141 N.H. 33, 37 (1996); see also Cin-Doo, Inc. v. 7-Eleven,

Inc., 2005 DNH 058 (McAuliffe, J.) (citing Prime Financial Group with approval). Under this

law, Plaintiff must prove that Medicus intended to waive the "no oral modification clause."

Prime Financial, 141 N.H. at 37 ("[t]he finder of fact must first determine that the parties

intended to waive the in-writing clause of the contract."). Courts in the First Circuit have held

that a party must prove an intention to waive "no oral modification clauses" by clear and

convincing evidence. See Cambridgeport Sav. Bank v. Boersner, 597 N.E.2d 1017, 1021-22 and

122 n. 10 (Mass. 1992) ("[t]he evidence of a subsequent oral modification must be of sufficient

force to overcome the presumption that the integrated and complete agreement, which requires written consent to modification, expresses the intent of the parties."); see also Wagner & Wagner Auto Sales, Inc. v. Land Rover N.A., Inc., 547 F.3d 38, 46 (1st Cir. 2008); Beal Bank S.S.B. v. Krock, 1998 WL 1085807, *3 (1st Cir. Sept. 3, 1998); Lyndon v. Nationwide Mut. Ins. Co., 1997 WL 260064, *10 (D.Mass. May 9, 1997). This is the burden Plaintiff must carry at trial.

Plaintiff must prove a meeting of the minds and the manifestation of assent by Medicus to his taking leave of "about a week" with an eventual return to Hardin. See Scott v. First American Title Ins. Co., 2007 WL 135909, *3 (D.N.H. 2007) (citing Durgin v. Pillsbury Lake Water Dist., 153 N.H. 818, 821 (2006)). Discovery confirms that there is no writing, no document or email, in which Medicus manifested its assent to Plaintiff's request for a temporary leave. The basis for Plaintiff's claim is limited to his memory of a telephonic conversation with a Medicus employees approximately four years ago. See Pl.'s Complaint ¶ 10.[1]

Evidence is relevant if it tends to make more probable or less probable a material fact in the case. Fed. R. Evid. 401. The testimony at trial will be that Medicus considered the hotel incident, and Plaintiff's admittedly disturbing behavior, when considering Plaintiff's request for a modification of the contract. See Smith Depo. at 32-33; 55. For its part, Hardin also took the incident into consideration. See Welch Depo. at 22-26. Medicus' knowledge of and understanding of the hotel incident makes it less likely that it would have agreed, as Plaintiff contends, to modify the contract and allow Plaintiff to return to Hardin after his leave. The evidence of Plaintiff's conduct at the Holiday Inn during the first week of his assignment is therefore relevant to Plaintiff's claims and should be admitted.

---

[1] In fact, the emails from Medicus to Plaintiff after he asked for leave request that he respond with an email confirming his resignation, which indicates that Medicus did not believe Plaintiff requested merely a temporary absence. Rather, the emails confirm that Plaintiff would not commit to a firm return date, which caused Medicus to treat Plaintiff as having abandoned his assignment.

**IV.**
**Evidence of Plaintiff's Conduct at the Hotel is Not Inadmissible Hearsay**

Plaintiff has also objected at times that the evidence concerning the incident at the hotel is hearsay or is based on hearsay. This objection presumably is based on the fact that no one from Hardin or Medicus actually witnessed Plaintiff's disturbing conduct at the hotel. What is known of the incident comes from Plaintiff's own testimony and the reports of the hotel staff that were relayed to Medicus and Hardin. Plaintiff, as a percipient witness, can certainly testify as to the events at the hotel. Based on his deposition testimony, he admits that he lost his temper, that he called 9-1-1 to get a ride to work and to complain that a hotel employee allegedly threw a phone book towards him, and that he was asked not to return to the hotel. Even if the hotel employees do not provide trial testimony, there will be at least one witness with personal knowledge of the events who can explain what happened.

Even the reports of the hotel staff are admissible, however. The evidence concerning Plaintiff's conduct at the hotel is not hearsay in that it is not offered for the truth of the matter asserted. It is, however, non-hearsay in that it is admissible to show the effect it had on Medicus; it is admissible to explain Medicus' subsequent refusal to agree to modify the parties' contract as Plaintiff alleges. 30B MICHAEL H. GRAHAM, FEDERAL PRACTICE AND PROCEDURE § 7005 at 55 (2006) ("Another group falling outside the category of hearsay consists of statements made by one person which become known to another offered as a circumstance under which the latter acted and as bearing on his conduct."); Vazquez v. Santiago-Diaz, 459 F.3d 144 (1st Cir. 2006) (The results of a comptroller's audit were not hearsay when offered to explain why the town terminated the plaintiff's employment); Kelley v. Airborne Freight Corp., 140 F.3d 335 (1st Cir. 1998) (Evidence of customer complaints was admissible to explain why the defendant-employer terminated the plaintiff); NLRB v. Custom Excavating, Inc., 575 F.2d 102, 107 (7th Cir. 1978).

Whereas Medicus' intent is an essential element of Plaintiff's case –whether Medicus manifested its intention to waive the "no oral modification clause" and agree to modified terms – the evidence of Plaintiff's conduct at the hotel should be admitted, even if one source for the report of his conduct consists of out-of-court statements made by hotel employees.  See Luckie v. Ameritech Corp., 389 F.3d 708 (7th Cir. 2004) (Statements of employees contained in affidavit were not hearsay when offered to explain the state of mind of the supervisor when reviewing the plaintiff's job performance.).

Plaintiff also alleges that Medicus knowingly and willfully violated RSA 358-A, New Hampshire's Consumer Protection Act.  Medicus' state of mind has therefore been placed at issue.  The effect of the hotel incident also bears upon whether Medicus engaged in rascalous conduct in knowingly and willfully committing an unfair or deceptive act, and therefore the hotel incident bears directly upon an essential element of Plaintiff's claim.  For this reason, testimony from Medicus, and others, regarding the hotel incident, which impacted Medicus' state of mind, should be admitted.  In United States v. Harris, 942 F.2d 1125 (7th Cir. 1991) the Court of Appeals reversed a criminal conviction where the trial court improperly excluded love letters from a gift donor where the letters evidenced whether the defendant believed she received a gift as opposed to income.  Whether the letters were true, whether the author truly loved the defendant, was not the evidentiary value to the case.  The Seventh Circuit wrote:

> These letters were hearsay if offered for the truth of the matters asserted – that Kritzk [the author] did in fact love Harris, enjoyed giving her things, wanted to take care of her financial security, and gave her the jewelry at issue as a gift.  But the letters were not hearsay for the purpose of showing what Harris believed because her belief does not depend on the actual truth of the matters asserted in the letters.  Even if Kritzik were lying, the letters could have caused Harris to believe in good faith that the things he gave her were intended as gifts.  This good faith belief, in turn, would preclude any finding of willfulness on her part

Id. at 1131 (internal citations omitted). In this light, whether the incident at the hotel happened at all is not central; the fact is that Medicus believed that the incident occurred and acted in accordance with that belief. Acting based on that belief makes less probable Plaintiff's claim for breach of contract, claim that Medicus acted deceptively, or that Medicus willfully or knowingly violated the Consumer Protection Act.

## V.
## Conclusion

In essence, Plaintiff contends there was an agreement to modify the parties' contract. Medicus disputes this allegation and insists that it rejected any change in the parties' signed contract. Evidence concerning Plaintiff's conduct at the Holiday Inn is clearly relevant because it makes less likely that Medicus would agree to the contract modification proposed by Plaintiff. Evidence concerning the events at the hotel is not barred by the hearsay rule because the evidence is not offered for the truth of the matter asserted. Rather, the evidence's probative value is to provide some important context and explanation to Medicus' decision not to change the terms of the contract. It also explains Medicus' state of mind at the time, which relates directly to essential elements of Plaintiff's claim, including his claim that Medicus acted willfully or knowingly to engage in unfair and deceptive conduct. For these reasons, evidence regarding the hotel incident should be admitted.

WHEREFORE, the Defendant Medicus Radiology Staffing, LLC requests that the Court:

A. Issue an order that evidence pertaining to Plaintiff's conduct at the Holiday Inn, is admissible; and

B. Grant such other and further relief as justice may require.

Respectfully submitted,

Medicus Radiology Staffing, LLC

By its attorneys,
Sheehan Phinney Bass + Green, P.A.


Dated: April 18, 2011                          By: ___/s/ David W. McGrath_____
                                                    David W. McGrath (#9347)
                                                    James P. Harris (#15336)
                                                    1000 Elm Street, P.O. Box 3701
                                                    Manchester, NH 03105-3701
                                                    (603) 627-8255
                                                    dmcgrath@sheehan.com


## Certification of Service

I hereby certify that on this 18th day of April, 2011, I electronically filed the foregoing with the Clerk of the United States District Court for the District of New Hampshire, using the CM/ECF system, which will send notification to the following counsel of record:

Mark E. Howard
Howard & Ruoff, PLLC
1850 Elm Street
Manchester, NH 03104
(603) 625-1254
mhoward@howardruoff.com


                                                    ___/s/ David W. McGrath_____
                                                         David W. McGrath